# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| KELLY PAUL, | § | |
|           Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:24-CV-913 |
| | § | |
| CITY OF FORT WORTH, | § | |
| | § | |
|           Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, Kelly Paul ("Plaintiff"), complaining of Defendant, City of Fort Worth ("Defendant"), for causes of action shows unto the Court the following:

## PARTIES AND SERVICE

1. Plaintiff Kelly Paul is a resident of the State of Texas and resides in Fort Worth, Texas, Tarrant County.

2. The City of Fort Worth may be served with process to David Cooke, City Manager, City of Fort Worth, 200 Texas Street, Fort Worth, Texas 76102 or wherever he may be found. *Issuance of a summons is requested at this time*.

## JURISDICTION

3. Jurisdiction is proper in this Court because this case has federal question jurisdiction over civil rights matters under 28 U.S.C. §§ 1441, 1443, and 1446. This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

## NATURE OF ACTION

4. This action seeks equitable relief, actual, compensatory and punitive damages, attorney's fees, expert witness fees, taxable costs of court, pre-judgment and post-judgment interest for violations of the Title VII of the Civil Rights Act of 1964 (Title VII) under 42 U.S.C. § 2000e, et seq., 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Texas Labor Code, Chapter 21 suffered by Plaintiff in the course of his employment with Defendant.

## CONDITIONS PRECEDENT

5. All conditions precedent to jurisdiction have occurred or been complied with a charge of discrimination was filed with the Equal Employment Opportunity Commission within three hundred days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

## FACTS

6. At all relevant times, Plaintiff was employed by Defendant.

7. Plaintiff was qualified and had prior experience, knowledge, and experience that the position required.

8. At all times, Plaintiff was of the female gender, and it was known by all her fellow employees and all management knew that she was in fact a female.

9. There was no confusion as to if the Plaintiff was a female. In fact, the basis of the allegations surrounding discrimination involved the Defendant's discriminatory actions towards her because she is a female.

10. Plaintiff worked for the City of Fort Worth as an Animal Control Officer from January 17, 2023, until March 1, 2023.

11. From day one of being employed Plaintiff was subjected to lewd, lascivious, and inappropriate comments about women. Plaintiff was also concerned about her supervisor's treatment of animals.

12. Approximately 10 days later, Plaintiff informed Supervisor Woodward about the gender discrimination and poor treatment she was receiving for pushing back about the gender discrimination with her training supervisor.

13. Supervisor Woodward seemed not to care about the gender discrimination and mistreatment of animals. In fact, he seemed annoyed that Plaintiff was complaining about being treated poorly for being a woman and even made some sexist remarks about a woman complaining about being discriminated against.

14. As a new employee, Plaintiff feared for her position, but she had to speak up against the discrimination, but the remarks and mistreatment of animals continued.

15. Though Woodward seemed annoyed, he knew what Plaintiff's supervisor was doing was inappropriate because Woodward then assigned Plaintiff to Officer Barajas at the North Animal Campus.

16. While on its face this seemed like a correct move, Barajas had been informed about Plaintiff's complaints of discrimination and mistreatment of animals. Because of this, Barajas made snide discriminatory remarks about women.

17. Plaintiff, wanting to stay employed, kept to herself and tried to ignore Barajas sexist jokes, innuendos, and passive-aggressive attitude towards women and herself. Often these remarks were made in front of other employees.

18. It rose to another level when Barajas tried to make Plaintiff perform an unsafe act with a dangerous dog. Barajas made the remark that if she were a man and not woman, then

handling this dangerous dog would not be a problem. Barajas lost his temper and relayed a slew of sexist and gender discriminatory statements at this incident.

19. The culture of sexism was rampant there. For example, Officer Hernandez often talked about women as though they were sexual objects. He said that women were good for sex and often women have "butter-face."

20. Again, Plaintiff went to her supervisor, Woodward, and again nothing was done. Instead, the hostility continued.

21. The next week, Barajas tried to force Plaintiff to drive the company truck. But this part of Plaintiff's training had been fulfilled. When Plaintiff expressed her desire not to drive, Barajas became visibly upset and told Plaintiff to go home.

22. Barjas and Woodward had some kind of conversation because Plaintiff was then transferred to a female trainer, Officer Parker. Officer Parker conveyed that Woodward had told her not to allow Plaintiff to do much of anything and to not train Plaintiff. It was clear they were going to terminate Plaintiff at this point.

23. On March 1, 2023, Plaintiff was terminated by Woodward because she was not "good" enough at her job. But no feedback or complaints had been issued to Plaintiff other than Woodwards annoyance at her complaining about gender discrimination, hostile work environment, and the retaliatory behavior of the male staff members because of her complaints.

24. Subsequently, on its own initiative, Woodward and other male staff members called other city animal shelters and essentially "black-listed" Plaintiff so that she would never get another position in her field again. This has happened to Plaintiff during numerous job interviews at other local city governments.

## GENDER DISCRIMINATION

25. Plaintiff pleads, restates, and realleges the previous paragraphs above, as if set forth fully herein, and would further show the Court as follows:

26. Gender discrimination is found when "an employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer: (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee." *See* Tex. Lab. Code § 21.051.

27. The case law is clear. A plaintiff must establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for its employment decision. If the defendant articulates a legitimate nondiscriminatory reason, then, the plaintiff, in order to prevail, must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

28. Within this general framework, the specifics to establish a prima facie case are outlined in the four-point *McDonnell* test. In *McDonnell*, the Court established a four-point test by which a plaintiff can show a prima facie case of discrimination. The plaintiff must show that: (1) the plaintiff belongs to a class protected by Title VII; (2) the plaintiff was qualified for his position; (3) the plaintiff, despite being qualified, was rejected; plaintiff experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more

favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.

29. Sex is a protected class, and she falls under this protected class a female.

30. Plaintiff was hired by the Defendant because she was clearly qualified for her position. Plaintiff had prior training and experience in this role. There were no prior disciplinary actions or poor performance reports regarding the Plaintiff. The only frustration or complaint was the fact that Plaintiff had complained about gender discrimination towards her supervisor which he was visible annoyed and upset about.

31. Plaintiff had expressed to management that gender discrimination was occurring. Though they may have waived it away, they continuously kept putting her in roles where other managers retaliated against her for complaining, making her do task that she was not required, insulting her, treating her differently that they treated other males in the field. Because of her complaints she was a subsequent target. And when she finally found a female training officer, management had told that female officer not to spend time training Plaintiff and severely limited the terms and conditions and scope of her work because of Plaintiff's claims of gender discrimination.

32. Eventually Plaintiff learned that another person, specifically a male was likely hired for the position.

**RETALIATION**

33. A plaintiff establishes a claim for retaliation when after engaging in protected activity as it relates to the Texas Labor Code is then subjected to an adverse employment action and a causal link exists between the protected activity and the adverse employment action." *Adams v. Vaughn*, No. 3:18-CV-1109-B-BT, 2019 WL 1003845, at *3 (N.D. Tex. Feb. 12, 2019) (quoting

*Wright v. Chevron Philips Chem. Co.*, 734 F. App'x 931, 935 (5th Cir. 2018)(per curiam)). Protected activity includes complaining to supervisors about acts of unlawful discrimination. 42 U.S.C. §2000e-3(a); *Valdarez v. Lubbock Cty. Hosp. Dist.*, 611 Fed. Appx. 816, 820-21 (5th Cir. 2015)(finding that the plaintiff's report of sexual harassment to his supervisor was protected activity).

34. Plaintiff engaged in a Title VII protected activity when she began to file complaints with Supervisor Woodward with Defendants' human resources "department" and management staff about the refusal to hire her for the appropriate position, harassment by several employees include the Human Resources Department, discriminatory employment practices based on gender, protected actions, and the increased scrutiny creating a hostile work environment.

35. Plaintiff suffered adverse employment action when she was wrongfully terminated, subject to harassment, increased scrutiny and a hostile work environment in retaliation for engaging in protected activities, e.g., complaining about Defendants' illegal and discriminatory practices. Defendant even engaged further by taking it upon themselves to notify local government animal facilities about Plaintiff alleging false accusations and essentially "blacklisting" her from her craft and career as an Animal Control Officer.

36. Instead of the harassment stopping, when she reported it to Woodward, it continued. Woodward's response only allowed for other employees to complain about women while also degrading them and further mocking them.

37. Further, Plaintiff was qualified for her position and there had been zero disciplinary action taken by Defendant against Plaintiff concerning her work performance until Plaintiff expressed her concerns (i.e. – engaging in protected activity).

38. Plaintiff suffered damages for which Plaintiff herein sues.

## HOSTILE WORK ENVIRONMENT

39. Plaintiff pleads, restates, and realleges the previous paragraphs above, as if set forth fully herein, and would further show the Court as follows:

40. Plaintiff asserts a violation of Tex. Lab. Code 21.051 under the Texas Commission on Human Rights Act (TCHRA). The code states:

> "An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:
>
> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
> (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee."

41. A hostile-work-environment claim is designed to address conduct that is so severe or pervasive that it destroys an employee's opportunity to succeed in the workplace. *Gardner*, 414 S.W.3d at 382 (citing *City of Houston v. Fletcher*, 166 S.W.3d 479, 489 (Tex. App. Eastland 2005, pet. denied)).

42. To succeed on a TCHRA claim of hostile work environment, the complained-of conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Waffle House, Inc.*, 313 S.W.3d at 806 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).

43. Plaintiff was subject to a hostile workplace because of the severe and pervasive bullying, ridicule and harassment, including but not limited to consistent comments and remarks about her gender, female body, less shifts, forced work that she did not consent, unwarranted and consistent aggressiveness by upper management. Defendants had actual knowledge of the hostile

workplace Plaintiff endured when she made repeated complaints to her supervisor. Defendants failed to properly investigate or otherwise resolve this hostile work environment. Instead, they transferred her to a sexist manager who only retaliated against Plaintiff for her claims. The actions by Defendants and its employees, or lack thereof, created an abusive working environment that ultimately resulted in Plaintiff filing a complaint.

44. More specifically, Plaintiff belonged to a protected class as a female. The facts are clear that the men who worked there did not discriminate against other men.

## RESPONDEAT SUPERIOR AND RATIFICATION

45. Whenever in this complaint it is alleged that the Defendants did any act or thing, it is meant that the Defendants' officers, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendants or was done in the normal and routine course and scope of employment of Defendants' officers, agents, servants, employees, or representatives.

## DAMAGES

46. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

   a. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

   b. Back pay from the date that Plaintiff was denied equal pay for equal work and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

   c. All reasonable and necessary costs incurred in pursuit of this suit;

   d. Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

   e. Inconvenience;

      f. Interest;

      g. Mental anguish in the past;

      h. Mental anguish in the future; and

      i. Loss of benefits.

## SPECIFIC RELIEF

47. Plaintiff seeks the following specific relief which arises out of the actions and/or omissions of Defendant described hereinabove:

    a. Neutral job reference; and

    b. An injunction against Defendants prohibiting discriminatory employment practices on the basis of sex and other protected categories.

## JURY DEMAND

48. Plaintiff respectfully demands this Court impanel a lawful jury to hear this case.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for the economic and actual damages requested hereinabove in an amount in excess of the minimum jurisdictional limits of the Court, together with prejudgment and post judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which the Plaintiff may be entitled at law or in equity, whether pled or unpled.

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**

    Respectfully submitted,

    Crocker Russell & Associates
    200 W. Oak Street
    Mansfield, Texas 76063
    Phone: (817) 482-6570
    Fax: (682) 232-1850

    */s/ Ali Crocker Russell*
    Ali Crocker Russell
    Bar no: 24098868
    Email: ali@cralawfirm.com
    **ATTORNEY FOR PLAINTIFF**